In re Claude Anthony SHERMAN, aka Claude A. Sherman, aka C.A. Sherman, aka Tony Sherman, aw Sherman Pet Enterprises, Inc., fdba Tony's Pets, fdba Dog & Cat Laundromat, Theresa Rene Sherman, aka Theresa R. Sherman, aka Mrs. Claude A. Sherman, Debtors.

Helen R. JOHNSON, Plaintiff,

v.

Claude Anthony SHERMAN, aka Claude A. Sherman, aka C.A. Sherman, aka Tony Sherman, aw Sherman Pet Enterprises, Inc., fdba Tony's Pets, fdba Dog & Cat Laundromat, and Theresa Rene Sherman, aka Theresa R. Sherman, aka Mrs. Claude A. Sherman, and Gary Miller, Trustee, Defendants.

Bankruptcy No. LA83–20189 BR.
Adv. No. LA84–50289 BR.

United States Bankruptcy Court,
C.D. California.

May 16, 1984.

H.H. Slate, Slate & Leoni, Los Angeles, Cal., for debtor.

John A. Bunnett, Long Beach, Cal., for plaintiff.

Jack Hartney, Los Angeles, Cal., for defendant.

Gary Miller, Los Angeles, Cal., Trustee.

James T. Eichstaedt, U.S. trustee.

## MEMORANDUM OF DECISION DENYING DEBTORS' DISCHARGE

BARRY RUSSELL, Bankruptcy Judge.

### INTRODUCTION

Tales of debtors operating businesses, filing bankruptcy and immediately re-opening the same businesses have been often told.

The matter presently before the Court presents such a course of events and more.

On November 2, 1983, the debtors Claude Anthony Sherman and Theresa Rene Sherman filed their joint Chapter 7 petition indicating being associated with (aw) Sherman Pet Enterprises, Inc. and formerly doing business as (fdba) Tony's Pets, and Dog & Cat Laundromat.

On February 3, 1984, the plaintiff Helen R. Johnson filed her Complaint objecting to the Debtors' discharge pursuant to § 727(a)(2) & (4) alleging that the debtors (1) fraudulently transferred, sold and concealed certain assets not listed in the schedules, and (2) fraudulently failed to include certain assets and debts in their schedules.

By attempted sleight of hand, now you see it, now you don't, and by outright deceit the debtors tried to paint a picture of their business affairs quite at odds with the truth.

### TONY'S PETS # 1

In August, 1980, the debtors purchased Mrs. Johnson's pet shop, The Plush Poodle at 2030 South Atlantic Blvd., Monterey Park, California for $54,000.00. The name was later changed to Tony's Pets.

The debtors made payments of only about $15,000.00 and in October, 1983, Mrs. Johnson obtained a judgment for $57,-043.78 against the debtors for failure to pay for the pet shop.

The debtors scheme was to discharge Mrs. Johnson's debt and to simply move the business to the new location.

Mr. Sherman testified that he conducted the business at 2030 South Atlantic Blvd. until October 31, 1983, and yet the schedules signed on October 28, 1983, and filed on November 2, 1983 indicate that the debtors' had no inventory, office equipment, furnishings, or supplies.

In fact, the only indication that the debtors were remotely connected with a business at the time of filing their petition on November 2, 1983, was the listing on Schedule B-2-T of:

> "Petitioner was engaged in business through ownership of 50 percent of the stock of SHERMAN PET ENTERPRISES, INC., a corporation. The value of my stock is about .... $100."

The Statement of Affairs reflects that the debtors operated the pet store from August 20, 1980 to February 24, 1982, and on February 25, 1982, began a new business Sherman Pet Enterprises, Inc. located at 2211 South Atlantic Blvd., Monterey Park, California.

In fact, the new business was merely a closely held corporation with a small office, across the street from Tony's Pets, with a few files and two desks. Mr. Sherman testified that when the bankruptcy was filed, this so called corporate office had already been abandoned.

The Schedules and Statement of Affairs were cleverly designed to give the impression that Tony's Pets had ceased to do business in 1982 and that the debtors were merely stockholders in a worthless corporation.

### DOG & CAT LAUNDROMAT

In September, 1981, the debtors began operating the Dog & Cat Laundromat at 727 E. Valley Blvd., San Gabriel, California. As the name implies, people brought in their dogs and cats to be washed.

As was the case with Tony's Pets, the Statement of Affairs reflects that the

Laundromat ceased doing business on February 24, 1982.

In fact, Mr. Sherman testified that they operated the Laundromat until December 31, 1983, almost two (2) months after the filing of the petition even though the Schedules and Statement of Affairs are totally silent regarding any on going business operation.

Although the debtors listed on Schedule B-1, a worthless leasehold interest in their apartment in Monterey Park, they failed to list the lease on the Laundromat.

During the first week in December, 1983, the debtors offered to sell the Laundromat to Phyllis Garcia for $23,000.00. At the time the location was stocked with grooming supplies as well as tubs, driers and other equipment used in grooming dogs and cats.

Mrs. Garcia testified that in early January, 1984, Mr. Sherman told her that he had closed the Laundromat and had opened a new pet store in Monterey Park.

Mr. Sherman testified the landlord let him out of the lease and that he moved the inventory to the new pet shop.

TONY'S PETS # 2

Mr. Sherman told Mrs. Garcia that he had been operating Tony's Pets at a new location, 127 S. Garfield Avenue, Monterey Park about three miles from Tony's Pets # 1, since October, 1983.

He also told her that he had consolidated the assets of the Laundromat and Tony's Pets at the new location and offered to sell her the new Tony's Pets for $50,000.00.

Mr. Sherman was firm on the $50,000.00 price and on January 16, 1984, Mrs. Garcia and Mr. Sherman entered into a escrow for the sale of Tony's Pets at 127 S. Garfield Avenue for $50,000.00.

Mrs. Garcia first learned of the debtors' bankruptcy in the middle of February, 1984, and cancelled the escrow on February 29, 1984, due to a number of reasons including tax problems the Shermans had with the State Board of Equalization and that stock and inventory of the pet shop was not being replenished after the escrow was opened.

Tony's Pet Shop # 2 is still being operated by the debtors.

Although Mr. Sherman testified that the new store opened for business on November 23, 1983, one of his customers, Ada Bacon testified that on October 22, 1983 (more than one week prior to the bankruptcy filing) she went to the new location and that it was opened for business.

Mrs. Bacon also testified that Mrs. Sherman told her that the Shermans kept pet supplies at their home.

Mr. Sherman testified that the new location had previously been a newspaper office and needed a great deal of work to modify it for use as a pet shop. He stated that he started to work on the new location in September, 1983, and spent approximately $9,000.00 in the process.

He also testified that in September, he borrowed $5,000.00 from his brother which was used for new plumbing at the new shop. Mr. Sherman's brother was not listed in the Debtors' schedules.

Mr. Sherman also stated that in November, after the filing, he cashed in a Certificate of Deposit for $2,300.00 which was listed in their schedules at $1,200.00.

According to Mr. Sherman, he did not want to be bothered with moving the assets of Tony's Pets # 1 and also needed money to make the necessary improvements at the new location, so he had a clearance sale the entire month of October, 1983.

On cross-examination Mr. Sherman admitted that he was still using the same cash register at Tony's Pets # 2 that was used while operating Tony's Pets # 1 and that the Tony's Pets electric sign was moved to the new shop from the old store.

Another customer, Faith C. Ward testified that she visited Tony's Pets # 1 in the middle of September, 1983, and although she was told that they were moving to the new location, the shop was fully operational with inventory of approximately $10,-000.00.

Even if Mr. Sherman were to be believed, the debtors basically milked the old pet shop of all of its assets in order to make improvements on the new Tony's Pets.

CONCLUSION

It is clear to the Court that the discharge of the debtors must be denied pursuant to 11 U.S.C. § 727(a)(2) and (4) because they falsified their schedules by omitting valuable assets including, the Dog & Cat Laundromat, the assets of Tony's Pets #1 and the assets of Tony's Pets #2 and by concealing these same assets.

IT IS SO ORDERED.